IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SERGEY ALEKSANDROVICH DEMYANOVSKIY,

Petitioner,

vs.

CAROLYN SOMMER, TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; DAVID EASTERWOOD, TODD LYONS, and MARKWAYNE MULLINS,

Respondents.

**8:26CV106**

**MEMORANDUM AND ORDER**

This matter comes before the Court on Petitioner Sergey Aleksandrovich Demyanovskiy's Amended Petition for Writ of Habeas Corpus. Filing No. 6. He asserts he is being detained by Respondents in violation of his Fifth Amendment due process rights and the Immigration and Nationality Act. For the reasons set forth herein, the Court grants the Petition and orders Respondents to release Petitioner subject to appropriate release conditions.

## I. BACKGROUND

Petitioner Sergey Aleksandrovich Demyanovskiy is a forty-four-year-old citizen of Russia who entered the United States as a child of a refugee on December 6, 1994, and was admitted by an Immigration Officer. Filing No. 6 at 5; Filing No. 11 at 4. At 18 years old, Petitioner moved to Lincoln, Nebraska, where he worked as a laborer in roofing and siding and then met the mother of his children, got married, and had three U.S. citizen children. Filing No. 6 at 5. On October 15, 2003, Petitioner adjusted status to a lawful permanent resident. Filing No. 6 at 5; Filing No. 11 at 4.

On February 28, 2020, Petitioner was encountered at the Lancaster County Jail in Lincoln, Nebraska, while serving a 10-to-15-year sentence for possession with intent to deliver methamphetamine and possession of a firearm during the commission of a felony. Filing No. 11 at 4. United States Immigration and Customs Enforcement ("ICE") served petitioner with form I-862 Notice to Appear and form I-200 Warrant of Arrest via certified mail on March 2, 2020, while the Petitioner was incarcerated in the Nebraska Department of Correctional Services ("NDCS") as part of the Institutional Hearings Program, which is designed to provide resolution to an immigration respondent's case prior to release from prison. *Id*. On January 25, 2021, Petitioner filed an Application for Asylum and for Withholding of Removal, Form I-589, which was later barred due to "PSC."[1] *Id*. On March 18, 2021, an immigration judge in Omaha, Nebraska, ordered Petitioner removed from the United States to Russia. Filing No. 6 at 2; Filing No. 11 at 4; Filing No. 11-3.

On May 20, 2025, ICE encountered Petitioner during jail checks at the Nebraska State Penitentiary while still serving his sentence described above, and an ICE detainer was issued. Filing No. 11 at 4. According to NDCS' online inmate records, Petitioner was sentenced to sentences consecutive to his 10-to-15-year sentence for possession with intent to deliver, and his total sentence is a minimum 15 years and 18 months to a maximum 25 years, 36 months, and 180 days. Petitioner's NDCS records further indicate he was released on discretionary parole on May 20, 2025, and will be subject to parole supervision until his projected release date of November 22, 2030. *See* https://dcs-inmatesearch.ne.gov/Corrections/COR_input.jsp (last visited Oct. 27, 2026) and attached

[1] While the Federal Respondents did not specify what "PSC" stands for, *see* Filing No. 11 at 4, the Court understands it to mean "particularly serious crime." *See* 8 U.S.C. § 1158(b)(2)(A)(ii); 8 U.S.C. § 1231(b)(3)(B)(ii); 8 CFR § 208.13(c).

NDCS Inmate Detail record. Following his release from NDCS custody on discretionary parole, Petitioner was released to ICE custody on May 20, 2025, to effectuate his removal order pursuant to 8 U.S.C. § 1231. Filing No. 6 at 5; Filing No. 11 at 4.

On May 24, 2025, Petitioner completed a travel document application and sent it back to ICE. Filing No. 6 at 2; Filing No. 11 at 4; Filing No. 11-5. This application was submitted for further review to ICE headquarters. Filing No. 11 at 4. On June 20, 2025, Petitioner was sent via certified mail form I-229(a) Warning for Failure to Depart, as well as an instruction sheet of what is required of Petitioner to assist in his removal from the United States. *Id*. at 5. On August 16, 2025, Petitioner was sent via certified mail the Decision to Continue Detention Letter, informing him ICE had decided to maintain his custody because "ICE is in receipt of or expects to receive the necessary travel documents to effectuate [Petitioner's] removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and [is] in the public interest." Filing No. 11-7; *see also* Filing No. 11 at 5.

On October 2, 2025, Petitioner was sent via certified mail Notice of Panel Interview, and on October 7, 2025, Petitioner agreed to be interviewed. Filing No. 6 at 2; Filing No. 11 at 5; Filing No. 11-8. The panel interview took place on November 6, 2025, and the interview memo was completed and forwarded on November 11, 2025, with the recommendation that Petitioner remain in custody, noting that he was "in the process of obtaining a travel document for removal." Filing No. 11-9; *see also* Filing No. 11 at 5. Petitioner has been detained in the McCook ICE Detention Center in McCook, Nebraska, since November 17, 2025, and is awaiting the issuance of a travel document from the Russian consulate so that he can return to Russia. Filing No. 6 at 2; Filing No. 11 at 5.

Petitioner has inquired with ICE about the status of his removal multiple times since filling out the travel document forms in the summer of 2025. Asking approximately once a month, ICE's response has always remained the same: "waiting on travel documents." Filing No. 6 at 2. At his custody review, he was told he would be detained "indefinitely" and he expressed his continued desire to be either removed to Russia or released from custody until ICE is able to effectuate his removal to Russia. *Id*. As of April 9, 2026, after continued correspondence with ICE headquarters, ICE had received response that citizenship verification was pending for Petitioner regarding his repatriation to Russia and issuance of a travel document. Filing No. 11 at 5. Russian officials advised ICE that they would notify ICE headquarters when this process is complete. *Id*.

On March 9, 2026, Petitioner, acting *pro se*, commenced the present action seeking a writ of habeas corpus. Filing No. 1. On April 21, 2026, the Court ordered Respondents to show cause why the writ should not be granted. Filing No. 5. Counsel for Petitioner entered their appearance on April 20, 2026, and filed an amended petition on April 23, 2026. Filing No. 6. The Federal Respondents[2] (hereinafter "Respondents") filed their response, Filing No. 9, and an index of evidence, Filing No. 10, consisting of the declaration of Deportation Officer Peter Miller ("DO Miller") with attached exhibits, Filing No. 11. Petitioner filed a reply brief on June 10, 2026. Filing No. 12. Respondent Sommer also filed a response to the show cause order, declining to take a position on whether the writ should or should not be granted. Filing No. 14.

---

[2] The Federal Respondents consist of all named Respondents but Carolyn Sommer, in her official capacity as acting Warden of McCook Detention Center.

## II. STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

Petitioner contends his prolonged detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a) because his removal is not reasonably foreseeable. Upon consideration, the Court agrees and concludes the writ should be granted.

Once an alien has been ordered removed, as Petitioner has, he or she is subject to mandatory detention during the initial ninety-day removal period. 8 U.S.C. § 1231(a)(2). If the alien is not removed after this ninety-day removal period, release is not automatic. Rather, the United States is allowed to determine if further detention is warranted or if the individual should be released under supervision. 8 C.F.R. § 241.4(i). Section 1231(a)(6) permits detention of aliens ordered removed beyond the removal period. As the Supreme Court explained,

> After the removal period expires, the Government "may" detain only four categories of people: (1) those who are "inadmissible" on certain specified grounds; (2) those who are "removable" on certain specified grounds; (3) those it determines "to be a risk to the community"; and (4) those it determines to be "unlikely to comply with the order of removal." § 1231(a)(6). Individuals released after the removal period remain subject to terms of supervision. *Ibid*.

*Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578–79 (2022). However, the Supreme Court has determined that an alien may not be detained indefinitely beyond the removal period. Examining the legislative history, the Court found congressional intent that detention of less than six months is generally acceptable. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Beyond this six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, there is no dispute that Petitioner has been detained beyond the presumptively reasonable six-month removal period. Petitioner's removal order was final on March 18, 2021, and his removal period began on May 20, 2025, when ICE detained him to effectuate his removal. The six-month period, thus, elapsed on November 20, 2025.

Petitioner has the initial burden of establishing good cause to believe there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner argues that, despite complying with all attempts to facilitate his removal, he had been detained for eleven months at the time he filed his amended petition on April 23, 2026, "with no reasonably foreseeable removal in sight." Filing No. 6 at 6. In response to Petitioner's repeated inquiries regarding the status of his removal, ICE has only said they were "waiting on travel documents," *Id*. at 2, and that he would be removed to Russia "soon," *see* Filing No. 9 at 3; Filing No. 11 at 5; Filing No. 11-7; Filing No. 11-9. Also, ICE told Petitioner at his custody review that he would be detained "indefinitely." Filing No. 6 at 2. At the present date, Petitioner has been detained by ICE a total of seventeen months,

and, as Petitioner points out, Respondents have been unable to secure Petitioner's removal during that time.

In response to Petitioner's arguments, Respondents contend that Petitioner cannot meet his initial burden by relying merely on the passage of time to show no significant likelihood of removal in the reasonably foreseeable future, and they cite to two cases in this District upholding detentions exceeding the presumptively valid six-month period. Filing No. 9 at 6. The cases Respondents rely on are distinguishable, however. First, in *Herdem v. Noem*, No. 7:26CV5001, 2026 WL 788087 (D. Neb. Mar. 20, 2026), Respondents contend that Chief Judge Buescher denied a petition for a writ of habeas corpus where the petitioner had been detained for eleven months. However, it is clear from a review of that decision that the petitioner's presumptively reasonable six-month detention period had only *recently* expired when he filed his petition and that the passage of the six-month period alone was insufficient to establish the petitioner's burden to "'provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Herdem v. Noem*, 2026 WL 788087, at *11 (quoting *Zadvydas*, 533 U.S. at 701). Similarly, in *Le v. Warden*, No. 4:26CV3041, 2026 WL 1078883 (D. Neb. Apr. 21, 2026), the petitioner's detention had only recently exceeded the six-month period.

Unlike the petitioners in the cases cited by Respondents, Petitioner has been held several months in excess of the expiration of the presumptively reasonable six-month period.[3] Moreover, Petitioner does not rely solely on the passage of time to establish

[3] Of note, when the same petitioner in *Herdem v. Noem*, *supra*, filed a second habeas petition challenging his postremoval detention under *Zadvydas*, Chief Judge Buescher concluded that the petitioner's then thirteen-month detention well exceeded the six-month presumptively reasonable removal period and granted habeas relief where the government offered "only speculation suggest[ing the petitioner's] removal

"good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner was told by ICE that he would be detained "indefinitely," Filing No. 6 at 2, and, as Petitioner points out, it appears ICE did not try to confirm his Russian citizenship until April 9, 2026—almost eleven months after Petitioner submitted his travel document forms to ICE and a month after he filed his pro se habeas petition and made this Court aware of his ongoing detention. *See* Filing No. 12 at 6 (citing Filing No. 9 at 7; Filing No. 11 at 5). These facts, in combination with ICE's failure to remove Petitioner during his now seventeen-month detention despite ICE's assurances that they were merely waiting on travel documents and his removal would be "soon," are sufficient to satisfy Petitioner's initial burden.

The burden now shifts to Respondents to respond with evidence showing Petitioner's removal is significantly likely in the reasonably foreseeable future. Respondents argue they have met this burden "by demonstrating removal is on 'the horizon,' as all parties involved—ICE, the Russian government, and the Petitioner—are cooperating with the process to remove Petitioner to Russia." Filing No. 9 at 7. As evidence, Respondents have presented the affidavit of DO Miller who states only that Petitioner remains detained while "awaiting the issuance of a travel document from the Russian consulate so that he can return to Russia" and, "[a]s of April 9, 2026, after continued correspondence with ICE HQ, ICE had received response that citizenship verification was pending for the Petitioner regarding his repatriation to Russia and issuance of a travel document. Russian officials advised ICE that they would notify ICE HQ when this process is complete." Filing No. 11 at 5.

---

might occur in the reasonably foreseeable future." *Herdem v. Lyons*, No. 4:26CV3158, 2026 WL 2234435, at *1 (D. Neb. Aug. 4, 2026).

The Court finds Respondents' evidence insufficient to rebut Petitioner's showing that his removal is not significantly likely in the reasonably foreseeable future. DO Miller's affidavit contains a general statement that ICE is awaiting issuance of a travel document for Petitioner so that he can return to Russia, but the only factual assertion in the affidavit specifically related to the likelihood of Petitioner's removal in the reasonably foreseeable future indicates that, in the eleven months that ICE had to effect Petitioner's removal, they had yet to receive confirmation that Russian officials have verified Petitioner's Russian citizenship with no clear indication when Russian officials will complete that process. *See Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (government did not rebut alien's showing of no significant likelihood of removal in reasonably foreseeable future where government's affidavit simply indicated that alien's home country had not indicated that it would refuse to issue travel documents). This evidence fails to demonstrate that Petitioner's removal is significantly likely in the reasonably foreseeable future, particularly where the length of Petitioner's postremoval detention now extends eleven months past the expiration of the six-month presumptively reasonable removal period. See *Zadvydas*, 533 U.S. at 701 ("And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

On this record, Petitioner has established he has been detained well over six months. He also has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents have failed to rebut this showing. Accordingly, the Court finds Petitioner's continued detention violates *Zadvydas* and the Fifth Amendment, and he is entitled to habeas relief.

In granting Petitioner habeas relief, the Court specifically grants a writ of habeas corpus releasing Petitioner from custody, but the release is not unconditional. Rather, as the Supreme Court has explained, "[i]ndividuals released after the removal period remain subject to terms of supervision." *Johnson*, 596 U.S. at 579 (citing 8 U.S.C. § 1231(a)(6)). Section 1231(a)(3) provides for supervision after the 90-day removal period expires pursuant to appropriate release conditions set forth in 8 C.F.R. § 241.13(h) in order to protect the public and ensure that Petitioner can be found if and when the time comes to remove him. The Court will, therefore, direct Respondents to impose, through an order of supervision, release conditions as prescribed by 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.13(h), and to report back to the Court on both the fact of Petitioner's release and the release conditions imposed.

IT IS THEREFORE ORDERED that:

1. Petitioner Sergey Aleksandrovich Demyanovskiy's Amended Petition for Writ of Habeas Corpus, Filing No. 6, is granted.

2. Respondents shall release Petitioner from custody as soon as practicable, and no later than 48 hours from the filing of this Order, subject to appropriate release conditions to be imposed by Respondents in an order of supervision in accordance with 8 C.F.R. § 241.13(h).

3. Respondents shall provide the Court with a status update concerning Petitioner's release and any conditions imposed on that release by no later than **November 5, 2026**.

4. The Clerk of Court is directed to set a pro se case management deadline using the following text: **November 5, 2026**: status report deadline.

Dated this 29th day of October, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge